David L. Mazaroli
Attorney for Plaintiff
250 Park Ave – 7th Floor
New York, NY 10177
Tel. (212)267-8480
Fax. (212)732-7352
*e-mail: dlm@mazarolilaw.com*
--------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

AGCS MARINE INSURANCE COMPANY
as subrogee of Aqua Star (USA) Corp.,

               Plaintiff,

     - against -

COSCO SHIPPING LINES CO., LTD.,

               Defendant.
--------------------------------------------------------------x

:   ECF CASE

:

:   **COMPLAINT**

:

:

:

Plaintiff AGCS Marine Insurance Co., through its undersigned attorney, alleges as follows for its complaint against defendant COSCO Shipping Lines Co., Ltd.. upon information and belief,

     1.    This action includes admiralty and maritime claims within the meaning of Rule 9(h) Fed. R. Civ. P. and also falls within the Court's federal question, diversity, and supplemental jurisdiction as to the remaining aspects of the action.  Plaintiff also seeks an adjudication under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

     2.    The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

     3.    Plaintiff seeks recovery for damage to a Manila to New York shipment of 3,000 cartons of pasteurized and chilled crabmeat (hereinafter "the Shipment") which

was caused by exposure to non-conforming temperatures during transportation from the Philippines to the United States.

4.      For the Shipment defendant COSCO Shipping Lines Co., Ltd. (hereinafter "COSCO" or "defendant") issued a negotiable order bill of lading which  described the voyage and shipment  as follows:

Place of Receipt: Manila North Harbour

Port of Loading: Manila, Philippines

Port of Discharge: New York

Place of Delivery: New York, NY

3000 CARTONS        CHILLED CANNED PASTEURIZED CRABMEAT

5.      Plaintiff AGCS Marine Insurance Company (hereinafter "AGCS" or "Plaintiff")  is a corporation organized under the laws of, and with its principal place of business in, the  State of Illinois.

6.       AGCS insured the Shipment during the subject transportation and  sues herein as subrogated insurer of the Shipment, having paid the insurance claim of its insured Aqua Star (USA) Corp.  ("Aqua Star") for the claimed cargo damage which gives rise to this action.  AGCS also seeks recovery of Aqua Star's deductible interest in the claim described herein.

7.      Aqua Star was at all material times the consignee, purchaser and/or owner of the cargo and the holder of the subject bill of lading, and a Merchant as defined

therein. Aqua Star was also the entity which sustained the loss arising from the claimed damage to the Shipment.[1]

8.      The insurance claim for the damage to the Shipment was investigated, adjusted and paid by AGCS from its place of business at 28 Liberty Street, New York, NY 10005.

9.      COSCO  is believed to be an alien corporation with its principal place of business in the People's Republic of  China.

10.     This Court has jurisdiction over COSCO who conducts business as a common carrier of cargo for hire, and as a provider of services related thereto, including with respect to shipments to, from, and through the Port of New York, and/or on behalf of business entities domiciled in New York.   According to  COSCO's present website a Southern District of New York forum selection clause applies for shipments to or from the United States.

11.     At all material times COSCO's business activities included the provision of such transportation services through its agent COSCO Shipping Lines (North America) Inc., whose registered agent is located at 28 Liberty Street, New York, NY 10005.

12.     For agreed consideration consisting of enhanced freight fees and accessorial charges, on or about August 26, 2018  COSCO contracted to provide specialized temperature-controlled carriage and related services with respect to the Shipment and to transport it from Manila to New York, NY.

---

[1] Aqua Star, a corporation organized under the laws of, and with its principal place of business in, the State of Washington,   executed a subrogation receipt which states that AGCS is subrogated to all rights of recovery on account of the loss and damage to the Shipment.

13.     COSCO was aware that the Shipment consisted of chilled pasteurized crabmeat which required temperature-controlled care during all periods of custody, handling, storage and carriage.

14.     COSCO agreed that the reefer temperature setting for the Shipment would be maintained at minus one degree (-1°) Centigrade during all periods of custody, handling, storage and carriage.

15.     COSCO provided forty-foot  reefer container CXRU1354914   and delivered said unit to the shipper of the crabmeat in the Philippines.

16.     The Shipment was in good order and  condition when delivered into the care, custody and control of COSCO at or near Manila.

17.     COSCO issued bill of COSU6189129580 dated August 26, 2018 which identified COSCO as the Carrier and  described the Shipment as 3000 cartons of chilled and pasteurized  crabmeat packed in cans.

18.     While in the custody, care and control  of COSCO, or entities acting on its behalf, the Shipment sustained damage which rendered it unfit for  intended sale and distribution.

19.     Temperature-recording devices placed inside the container revealed that the Shipment was exposed to non-complying temperatures during the period of COSCO's contractual responsibility and its care, custody and control.[2]

---

[2] According to COSCO the reefer container  was  equipped with a built-in temperature data recording device which allows download and printout of temperature data recorded for specific time periods. COSCO has not disclosed to AGCS a copy of the printout of the temperature data for the period of the voyage in suit.

20.     As a result of COSCO's  failure to maintain specified temperature-controlled care, the Shipment sustained damage, depreciation and loss of value and was sold at salvage.

21.     As a result of the aforesaid, AGCS, and those on whose behalf it sues, sustained  damages in the amount of $441,630.35 no part of which has been paid although duly demanded.

22.     AGCS also incurred incidental mitigation expenses including survey fees.

23.     Plaintiff sues herein on its own behalf and as agent and trustee for and on behalf of anyone else who may now have or hereafter acquire an interest in this action.

## FIRST  CAUSE OF ACTION

### (Breach of Contract  and of Duties Under COGSA, 46 U.S.C. § 30701)

24.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 23 of this complaint

25.     COSCO was a common carrier of merchandise for hire within the meaning of the Carriage of Goods by Sea Act § 4(5), Ch. 229, 49 Stat. 1207 (1936), *reprinted in* note following 46 U.S.C. § 30701 (COGSA), and contracted to properly and safely handle,  load, stow, refrigerate, store, carry, and monitor the Shipment from the place of receipt in  India to the place of delivery in the United States and to provide the specialized temperature-controlled care required by the crab meat.

26.     COSCO breached its  duties under COGSA and under the contract of carriage entered into under the statute by failing to properly and safely handle,  load, stow, refrigerate, store, carry, and monitor the Shipment and by failing to maintain required temperature-controlled care for the chilled crab meat.

27.     As a proximate result of the foregoing, the Shipment sustained damage and loss in value thereby causing  AGCS, and those on whose behalf it sues, to suffer damages  in the amount of $441,630.55 plus incidental mitigation expenses including survey fees.

## SECOND CAUSE OF ACTION

### (Breach of Warranties and Nondelegable Cargoworthiness Duties)

28.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 23 of this complaint.

29.     COSCO contracted *inter alia*  to carry the Shipment from the port of loading to the port of discharge aboard  ocean-going vessels, including  containerships with fixed cell guides and designed to carry cargo in  truck-size intermodal containers which serve as extensions of the holds of the vessel.

30.     COSCO's  statutory and contractual obligations, as well as its warranties under the general maritime law, included the nondelegable duty to provide a seaworthy and a cargoworthy ocean shipping reefer container fit in every respect to carry the Shipment at the specified temperature range during all periods of the multimodal carriage.

31.     For the Shipment COSCO provided the aforesaid reefer container which was  part of the defendant's fleet of rented, leased, or owned reefer containers.

32.     COSCO, and/or entities acting on its behalf, was at all material times responsible for the maintenance, upkeep and repair of the subject reefer container.

33.     The reefer container  provided by or on behalf of COSCO was neither cargoworthy nor seaworthy and was not fit to carry the Shipment  because it was

structurally unsound, inadequately maintained, and improperly repaired and failed to maintain the contractually specified temperature range during all requisite periods. In addition the COSCO personnel responsible for the Shipment were unfit and not properly trained to provide the temperature controlled care which chilled pasteurized crabmeat required.

34.    During the period of COSCO's custody, the Shipment was exposed to noncomplying temperatures which caused damage to the crabmeat and rendered it unfit for intended sale and distribution.

35.    The claimed damage to the Shipment was caused in whole or in part by the unseaworthy and uncargoworthy condition of the reefer container provided by or on behalf of COSCO.

36.    As a result of COSCO's breaches of duties and warranties with respect to the reefer container it designated to carry the Shipment AGCS, and those on whose behalf it sues,    sustained damages in the amount  of $441,630.35 plus incidental mitigation expenses including survey fees..

**THIRD CAUSE OF ACTION**

**(Material Deviation/Fundamental Breach)**

37.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 23 of this complaint.

38.    COSCO charged supplemental fees to provide specialized temperature-controlled care during all stages of the transportation.

39.     By exposing the crabmeat to non-conforming temperatures COSCO committed fundamental breaches of, and material deviations from, the terms of the specialized temperature-controlled carriage contract.

40.     As a proximate result of the foregoing, the Shipment sustained damage and loss in value thereby causing  AGCS, and those on whose behalf it sues, to suffer damages  in the amount of $441,630.55 plus incidental mitigation expenses including survey fees.

## FOURTH CAUSE OF ACTION

### (False Bill of Lading)

41.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 of this complaint.

42.      COSCO issued a negotiable bill of lading which falsely represented that the Shipment was "chilled" when in fact it was carried  a substantially below-freezing set temperature of minus eighteen degrees (-18°)  Centigrade.

43.      In paying for the Shipment Aqua Star relied on the COSCO bill of lading to its detriment.

44.     As a proximate result of the foregoing, the Shipment sustained damage and loss in value thereby causing  AGCS, and those on whose behalf it sues, to suffer damages  in the amount of $441,630.55 plus incidental mitigation expenses including survey fees.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment)

45.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 of this complaint.

46.     This cause of action is brought under and pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

47.     An actual controversy of a justiciable nature exists between AGCS and COSCO involving the enforceability of a contract of carriage forum selection clause Defendant has alleged to be applicable to the claim for damage to the Shipment.

48.     Plaintiff requests this Honorable Court to declare the rights, obligations, and other legal relationships of the parties with respect to the forum selection clause.

49.     AGCS, as subrogee of Aqua Star, and COSCO are entities at interest under the contract of carriage within the meaning of the Declaratory Judgement Act.

50.     Although its present website states that for shipments to or from the United States a Southern District of New York forum selection clause is applicable, COSCO has alleged that the claim for damage to the Shipment  is subject to a People's Republic of China forum selection clause.

51.     The statute of limitations under  COGSA and the contract of carriage is one year.  COGSA states that "[i]n any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. §30701(3)(6).

52.     The delivery date for the Shipment was on or about October 16, 2018. Before this action was filed COSCO granted to  AGCS a series of  voluntary extensions of the aforesaid  one-year statute of limitations deadlines, with the present extension running up to and including to August 26, 2020.

53.     Although such extensions are recognized, and even encouraged, by federal courts in the United States in admiralty actions, Courts in the People's Republic of China do not recognize, enforce or consider valid a defendant's voluntary extension of a statute of limitations deadline.

54.     If the subject claim for damage to the Shipment  is required to proceed in the People's Republic of China, as COSCO now alleges,  AGCS will be left with no remedy for its losses because in China the claim will be deemed time-barred and the causes  of action extinguished under the one-year time-for-suit deadlines.

55.     AGCS respectfully requests that this Court declare, decree and adjudge (a) that any China forum selection clause is invalid and unenforceable for purposes of AGCS's claim for damage to the Shipment; (b) that COSCO be estopped from relying on any such China forum selection clause;  and (c) that any affirmative defense asserted by COSCO based on a China forum selection clause be stricken.

56.     AGCS further requests this action to recover for the claimed damage to the Shipment be allowed to proceed in the Southern District of New York.

WHEREFORE, plaintiff AGCS Marine Insurance Company demands judgment against defendant COSCO Shipping Lines Co., Ltd. in the amount of $441,630.55 plus incidental expenses in addition to interest at the rate of 9% per annum, attorneys fees, and the costs of this action. Plaintiff respectfully requests that the Court grant such other and further relief as warranted by justice including a judgment declaring that COSCO  is estopped from relying on any form of  China forum selection clause for purposes of the claims in suit and that any affirmative defense based on such a forum selection clause be stricken.

Dated:    New York, New York
          June 25, 2020

                                    LAW OFFICES,
                                    DAVID L. MAZAROLI

                                    By: *s/David L. Mazaroli*

                                    _____
                                    David L. Mazaroli
                                    Attorney for Plaintiff
                                    250 Park Ave. – 7th Floor
                                    New York, New York 10177
                                    Tel: (212)267-8480
                                    Fax: (212)732-7352
                                    E-mail: *dlm@mazarolilaw.com*